UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES DALE MOSELEY,

Plaintiff,

v.

DEPARTMENT OF SOCIAL AND
HEALTH SERVICES et al,

Defendants.

CASE NO. 3:17-cv-05427-BHS-JRC
REPORT AND RECOMMENDATION

NOTED FOR: May 1, 2020

This 42 U.S.C. §1983 civil rights matter has been referred to the undersigned Magistrate Judge. Before the Court is defendants' motion for judgment on the pleadings. Dkt. 65 (amended).

Plaintiff James Dale Moseley is a Washington state prisoner in the custody of the Department of Corrections ("DOC") and was previously housed at the Special Commitment Center ("SCC"). Dkt. 29 at 3-4. Defendants argue that plaintiff has failed to state a claim and move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* Dkt. 65.

The Court finds that plaintiff has sufficiently alleged that defendant Smith retaliated against plaintiff when he allegedly assaulted plaintiff for complaining and during the same incident, defendant Smith used unreasonable force when he punched and choked plaintiff while

REPORT AND RECOMMENDATION - 1

1    plaintiff was restrained and not resisting. Thus, the Court recommends that defendants' motion

2    for judgment on the pleadings be denied as to plaintiff's retaliation claim and use of force claim

3    against defendant Smith. The Court also recommends denying defendants' motion as to qualified

4    immunity at this time.

5         The remainder of the allegations in the complaint fail to allege a minimum factual and

6    legal basis for each claim. Therefore, the Court recommends granting defendants' motion but

7    allowing plaintiff leave to amend his complaint with respect to the following claims: use of force

8    claim against defendants Grimm and Quintanella; retaliation claim related to placement in

9    segregation and denial of recreation time and against defendants Grimm and Quintanella;

10   decontamination claim against defendants Grimm and Smith; inadequate mental health treatment

11   claim against defendants Harris, Coryell, and Rockwell; due process claim based on placement

12   in segregation; equal protection claim; unreasonable search and deprivation of property claims;

13   access to courts claim; claim(s) against defendant Davos; and ADA and RA claims. All other

14   claims fail as a matter of law, and the Court recommends granting defendants' motion to dismiss

15   as to those claims without leave to amend. The Court also recommends that plaintiff's request for

16   injunctive relief be denied as because plaintiff was transferred and is no longer subject to the

17   alleged constitutional violations.

18                              **BACKGROUND**

19        According to plaintiff's complaint, he suffers from a diagnosed mental illness. Dkt. 29 at

20   4. Plaintiff alleges that his psychotropic medication was changed when he was transferred from

21   DOC custody to the SCC. *Id.* at 4. Plaintiff alleges that he was taken off his medications, his

22   condition worsened, and "cause[d] even more aberrant behavior that eventually lead to new

23   criminal charges." *Id.* at 4. Plaintiff alleges that he was "denied proper mental health service so

24

that he would exhibit abhorrent behavior and assault others at SCC. This would allow the SCC to have him sent back to DOC custody. This in fact occurred." *Id.* at 6.

Plaintiff alleges violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, Americans with Disabilities Act ("ADA"), Rehabilitation Act ("RA"), and state law claims of battery, assault, and harassment. Dkt. 29 at 5. Plaintiff seeks monetary damages and injunctive relief. Dkt. 29.

Plaintiff names the following as defendants: Department of Social and Health Services ("DSHS") and several DSHS employees: Terrell Smith, Keith Davos, Justin Grimm, Mark Strong, Cathi Harris, Dr. Holly Coryell, and Alan Quintanella. Dkt. 29 at 2. Plaintiff identifies non-party Mcclung through the complaint but does not list this individual as a defendant. Dkt. 29.

## PROCEDURAL HISTORY

Plaintiff initially filed his complaint on June 2, 2017. Dkt. 1. In November 2017, counsel appeared on behalf of plaintiff and filed the third amended complaint (Dkt. 29). Dkts. 23, 24, 25. The Court stayed this matter based on agreement between the parties. Dkts. 49, 53, 56. The Court lifted the stay on June 26, 2019 and issued a scheduling order. Dkt. 62.

Defendants filed their amended motion for judgment on the pleadings on October 2, 2019. Dkt. 65. Plaintiff filed a response, Dkt. 68, and statement of defendants' answer to each of plaintiff's allegations, Dkt. 69. Defendants filed a reply. Dkt. 70.

On December 2, 2019, the Court ordered the parties to submit supplemental briefing and address whether some or all of plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) and its progeny. Dkt. 72. On December 20, 2019, defendants filed a

1   supplemental brief. Dkt. 75. Plaintiff filed a supplemental response, Dkt. 80, and defendants filed

2   a reply, Dkt. 81.

3   **STANDARD OF REVIEW**

4         Defendants move for dismissal of plaintiff's complaint pursuant to Federal Rule of Civil

5   Procedure 12(c). Dkt. 65. A motion for a judgment on the pleadings "is properly granted when,

6   taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled

7   to judgment as a matter of law." *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir.

8   1999). Because the motions are functionally identical, the same standard of review that is

9   applicable to a Rule 12(b)(6) motion to dismiss applies to its Rule 12(c) analog. *Dworkin v.*

10  *Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989).

11        A court may grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) of

12  the Federal Rules of Civil Procedure "if it appears beyond doubt that the plaintiff can prove no

13  set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d

14  1295, 1300 (9th Cir. 1983) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1990)). Mere

15  conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of

16  action" are not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Chavez v.*

17  *United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012). "Dismissal can be based on the lack of a

18  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

19  theory." *Ballistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).

20  **DISCUSSION**

21        To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the

22  defendant must be a person acting under color of state law and (2) his conduct must have

23  deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of

the United States. *Paratt v. Taylor*, 451 U.S. 527 (1981). A third element of causation is implicit in the second element. *See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert denied*, 449 U.S. 875 (1980).

At the time of the alleged violations in 2015 and 2016, plaintiff was a civil detainee at the SCC, not a prisoner. Dkt. 29. The SCC houses individuals whom a Washington State court has found, beyond a reasonable doubt, to be sexually violent predators ("SVP"). *See* Wash. Rev. Code §§ 71.09.010-.903. Determinations of SVP status and commitment to the SCC are effectuated in a civil proceeding, and the primary purpose of the commitment is long-term intensive inpatient treatment. *Id.*

The distinction between civil detainee and prisoner is, at times, legally relevant. *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."). Although civilly detained persons must be afforded more considerate treatment and conditions of confinement than criminals, where specific standards are lacking, courts may look to decisions defining the constitutional rights of prisoners to establish a floor for the constitutional rights of persons detained under a civil commitment scheme, *Padilla v. Yoo,* 678 F.3d 748, 759 (9th Cir. 2012) (citing *Hydrick v. Hunter,* 500 F.3d 978, 989 (9th Cir. 2007), *vacated and remanded on other grounds by* 556 U.S. 1256 (2009), and may borrow Eighth Amendment standards to do so, *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998); *Redman v. County of San Diego,* 942 F.2d 1435, 1441 (9th Cir. 1991), *abrogated on other grounds by* 511 U.S. 825 (1994). But the conditions under which civil detainees are held cannot be harsher than those under which prisoners are

1   detained except where the statute itself creates a relevant difference. *Hydrick*, 500 F.3d at 989

2   n.7.

3       **A.  Heck Bar**

4       The Court construed plaintiff's complaint, in part, as alleging that defendants' actions are

5   the cause for his current incarceration. *See* Dkt. 72 (citing Dkt. 29). For example, plaintiff alleges

6   that he "became so agitated as a result of the defendants' actions, and lack of mental health

7   treatments, that he committed an offense so that he could go back to prison where he receives

8   proper care and treatment." Dkt. 29 at 11. Plaintiff alleges that "but for the denial of his

9   medications which were working to mitigate his behavioral problems, he would not have acted

10  out and been charged with a crime." *Id.* at 4. The Court ordered the parties to file supplemental

11  briefing to clarify and address whether some or all of plaintiff's claims are barred under *Heck v.*

12  *Humphrey*, 512 U.S. 477, 487 (1994).

13      Under *Heck,* a plaintiff may only recover under § 1983 for an allegedly unconstitutional

14  conviction if he can prove that the conviction has been reversed on direct appeal, expunged by

15  executive order, declared invalid by a state tribunal authorized to make such a determination, or

16  called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 487.

17  However, the Supreme Court has clarified that *Heck* does not bar a § 1983 claim that "threatens

18  no consequence for [an inmate's] conviction or the duration of [his or her sentence.]"

19  *Muhammad v. Close,* 540 U.S. 749, 751 (2004). "Habeas jurisdiction is absent, and a [civil

20  rights] action proper, where a successful challenge to a prison condition will not necessarily

21  shorten the prisoner's sentence[.]" *Ramirez v. Galaza,* 334 F.3d 850, 859 (9th Cir. 2003).

22      In their supplemental response, defendants argue that plaintiff's allegations attempt to

23  shift responsibility for the causation of his offense and could be construed as an attack on

1    plaintiff's convictions by suggested diminished capacity or insanity. Dkt. 75 at 3-4. Defendants

2    also argue that while the complaint appears to implicate *Heck* in some fashion, it is difficult to

3    discern to what extent due to the lack of clarity in the complaint. *Id.* at 4. Defendants contend that

4    plaintiff's claims should be dismissed to the extent that he seeks damages for wrongful

5    incarceration and plaintiff's guilty pleas for second degree assault and felony harassment would

6    be impugned. Dkt. 75 at 4.

7        In response, plaintiff concedes that *Heck* bars any claims that his civil rights were

8    violated by his conviction for assault. Dkt. 80 at 2. Plaintiff also states that he does not allege a

9    false imprisonment claim, acknowledges that he pled guilty to assault, and does not further

10   challenge the legality of his current confinement in state prison. Dkt. 80 at 2.

11       The Court agrees with defendants that the complaint is not a model of clarity. It is

12   difficult to discern the factual basis of plaintiff's claims. Based on plaintiff's concession, to the

13   extent that plaintiff's allegations can be construed as a wrongful incarceration or false

14   imprisonment claims, those claims are barred under the *Heck* doctrine and should be dismissed

15   without leave to amend.

16       Plaintiff's remaining claims for damages will not necessarily imply the invalidity of

17   plaintiff's underlying conviction because a judgment in this action would only establish, for

18   example, that plaintiff was retaliated against, plaintiff's due process rights were violated, or

19   defendants used unreasonable force. Put another way, success on plaintiff's First, Fourth, Fifth,

20   Eighth and Fourteenth Amendment claims would not necessarily imply that plaintiff is actually

21   innocent of assault. *See Cunningham v. Gates,* 312 F.3d 1148, 1153-54 (9th Cir. 2002), *as*

22   *amended on denial of reh'g* (Jan. 14, 2003) ("In evaluating whether claims are barred by *Heck*,

23   an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element

24

1    of the offense of which he has been convicted.' "). As discussed below, the Court recommends

2    denying in part and granting in part defendants' motion as to the remaining claims.

3                                    **B.  Use of Force**

4           Plaintiff alleges that defendants Smith, Grimm, and Quintanilla "knowingly and

5    intentionally used unnecessary, improper and unlawful physical force, or authorized and

6    approved their agents and employees to use unnecessary, improper and unlawful physical force

7    against plaintiff in order to torture (inflict pain) to force compliance with their verbal

8    commands." Dkt. 29 at 12. Plaintiff alleges that he suffered "puncture marks, bruising, cuts and

9    scrapes" as well as emotional injury. *Id.* at 13.

10          To prove an excessive force claim under § 1983, a pretrial detainee must show that the

11   "force purposely or knowingly used against him was objectively unreasonable." *Kingsley v.*

12   *Hendrickson*, —— U.S. ——, 135 S.Ct. 2466, 2473 (2015). A court cannot apply this standard

13   mechanically. *Id.* Rather, "objective reasonableness turns on the 'facts and circumstances of each

14   particular case.' " *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court must

15   make this determination from the perspective of a reasonable officer on the scene, including

16   what the officer knew at the time, not with the 20/20 vision of hindsight. *Kingsley*, 135 S.Ct. at

17   2473. A court "must also account for the 'legitimate interests that stem from [the government's]

18   need to manage the facility in which the individual is detained,' appropriately deferring to

19   'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal

20   order and discipline and to maintain institutional security.' " *Id.* (quoting *Bell v. Wolfish*, 441

21   U.S. 520, 540 (1979)) (alterations in original).

22          Factors that may bear on the reasonableness of the force used include "[1] the

23   relationship between the need for the use of force and the amount of force used; [2] the extent of

24

the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Kingsley*, 135 S.Ct. at 2473.

### 1. *Defendant Smith*

Plaintiff alleges that on October 18, 2015, while conducting a pat down search of plaintiff, defendant Smith punched plaintiff in the mouth. Dkt. 29 at 7. At the time he was punched, plaintiff alleges that he was restrained, being held by staff with his arms pinned to the wall, and was not resisting. *Id.* Plaintiff alleges that he was voicing his displeasure with defendant Smith for taking his property. *Id.* Plaintiff alleges that defendant Smith took him to another floor and while in a stairwell, punched plaintiff multiple times in the head. *Id.* Plaintiff alleges that he was restrained, no threat to defendant Smith or other staff. *Id.* Plaintiff alleges that defendant Smith choked plaintiff using plaintiff's sweatshirt. *Id.* Plaintiff alleges defendant Smith used enough force to rip the sweatshirt while plaintiff was in restraints. *Id.*

With respect to the second factor – the extent of plaintiff's injury – while plaintiff does not allege any facts demonstrating that he required medical treatment as a result of defendant Smith's actions, he does allege facts indicating he suffered notable injuries including "puncture marks, bruising, cuts and scrapes" as well as emotional injury as a result of the alleged use of excessive force.

With respect to the remaining factors, plaintiff alleges that he was verbally expressing his concerns and that he was restrained and not physically resisting while he was punched and choked which shows that the use and amount of force was objectively unreasonable and in a greater amount than necessary. In addition, plaintiff alleges that there was more than one officer at the scene and plaintiff's allegations do not indicate that defendant Smith attempted to sever the

1    severity of a forceful response, for example, by giving plaintiff orders. The alleged actions by

2    defendant Smith, if proven, do not fall within the deference accorded to prison officials to

3    manage order, discipline, and security. *See Kingsley*, 135 S.Ct. at 2473 (internal citations

4    omitted).

5        Here, applying the *Kingsley* analysis, plaintiff has alleged facts demonstrating that the use

6    of force by defendant Smith was objectively unreasonable under the totality of the

7    circumstances. Plaintiff must only plead sufficient facts for the Court to find it "plausible" that

8    defendant Smith used objectively unreasonable force in violation of the Fourteenth Amendment.

9    *See Iqbal*, 556 U.S. at 681. Although a summary judgment motion may result in a different

10    conclusion, defendants have not shown that plaintiff's set of facts, if proven, would not entitle

11    plaintiff to relief. *See Keniston*, 717 F.2d at 1300. Thus, the Court recommends that defendants'

12    motion for judgment on the pleadings with respect to this claim be denied.

13        *2.    Defendant Grimm*

14        On October 18, 2015, plaintiff alleges that he was in segregation and locked in a cell. *Id.*

15    Plaintiff alleges that he had a psychological relapse and covered his cell window. *Id.* at 7-8.

16    Plaintiff alleges that he was verbally expressing his anger at having his property damaged and

17    being placed in segregation. *Id.* Plaintiff alleges he was not attacking anyone but was loudly

18    complaining. *Id.* Plaintiff alleges that defendant Grimm used pepper spray to force plaintiff to

19    comply with his commands. *Id.* at 8. Plaintiff alleges that defendant Grimm sprayed plaintiff in

20    the face with a series of long bursts of pepper spray. *Id.* Here, plaintiff does not allege any facts

21    demonstrating what, if any, injury resulted from the pepper spray. And while plaintiff alleges

22    that defendant Grimm sprayed him with "long bursts," there are no additional allegations as to

23    the actual duration of the use of pepper spray and its impact on plaintiff. Plaintiff alleges that

24

1   there was a need for defendant Grimm to use force and the amount of force was related to that

2   need. Defendant Grimm attempted to temper the severity of the force – plaintiff was given

3   orders, which plaintiff acknowledges he failed to follow, and plaintiff was pepper sprayed.

4   Plaintiff has not alleged there were any other individuals at the scene, which demonstrates that

5   defendant Grimm believed he was under threat as the only officer. . Although plaintiff alleges

6   that he was not "swarmed" by any officers, he has failed to allege any facts demonstrating a less

7   severe form of force that the officers would have applied, other than giving verbal orders, which

8   were obviously not effective, or doing nothing.

9       In sum, without specific allegations as to any injury which resulted from the pepper spray

10   or the specific duration of the use of the pepper spray, the allegations at this time do not

11   demonstrate the unreasonable use of force by defendant Grimm. Accordingly, the Court

12   recommends granting defendants' motion as to this claim. As noted below, however, plaintiff

13   should be given an opportunity to file an amended complaint to allege facts, if he can, to support

14   a use of force claim against defendant Grimm.

15       *3. Defendant Quintanella*

16       On November 30, 2015, plaintiff alleges that he complained about this confiscation of his

17   property. *Id.* at 10. Plaintiff alleges that defendant Quintanella pepper sprayed plaintiff for 15 or

18   more seconds. *Id.* Plaintiff alleges that defendant Quintanella wanted plaintiff to go into a cell or

19   lockable room, but plaintiff refused and continued to complain. *Id.*

20       Again, plaintiff fails to allege facts demonstrating what, if any, injury resulted when

21   defendant Quintanella allegedly pepper sprayed plaintiff. As with defendant Grimm, the

22   allegations demonstrate that the use of force was related to the need and defendant Quintanella

23   attempted to temper the severity of the force through a verbal command, but plaintiff refused to

24

1  comply with orders to enter a cell. Plaintiff concedes that defendant Quintanella used pepper

2  spray to gain plaintiff's compliance. Dkt. 29 at 10. Hence, without additional information as to

3  any resulting injury, the allegations in the complaint do not weigh in favor of finding the use of

4  unreasonable force by defendant Quintanella. Accordingly, the Court recommends granting

5  defendants' motion as to plaintiff's use of force claims against defendant Quintanella. As noted

6  below, however, plaintiff should be given an opportunity to file an amended complaint to allege

7  facts, if he can, to support a use of force claim against defendant Quintanella.

8  ### C. Pepper Spray Decontamination

9  The Court notes that in the factual allegations section of his complaint, plaintiff also

10  alleges that defendants Grimm and Smith did not provide clean cool water for decontamination

11  after plaintiff was pepper sprayed. Dkt. 29 at 8. Plaintiff alleges that defendants Grimm and

12  Smith gave plaintiff a garbage can with water in it and plaintiff was told to stick his head in the

13  can to decontaminate. *Id.* Plaintiff alleges that defendants Grimm and Smith knew that the water

14  in the can would become contaminated and would re-contaminate plaintiff. *Id.* Plaintiff alleges

15  that defendants Grimm and Smith offered the use of a warm or hot shower but they both knew

16  that this would exacerbate the effects of the pepper spray. *Id.* Plaintiff alleges that he was forced

17  to use toilet water to decontaminate his eyes which defendants allowed and encouraged. *Id.*

18  Plaintiff also alleges that defendants forced plaintiff into a scalding hot shower to decontaminate

19  himself and it was painful. *Id.* at 10.

20  Aside from reciting these allegations, plaintiff does not raise a specific claim challenging

21  his conditions of confinement or the lack of adequate medical treatment after he was pepper

22  sprayed. *See* Dkt. 29. It appears that plaintiff offers these facts in support of his use of force

23  claim, however, such allegations are distinct and would be relevant to the adequacy of

24

1    subsequent medical treatment, not the use of force. *See e.g. Falla v. Rackley,* 2018 WL 6419671,

2    at *2 (E.D. Cal. Dec. 6, 2018) (construing plaintiff's allegations of failure to provide

3    decontamination following pepper spraying as a lack of adequate medical treatment claim

4    separate from the excessive force claim raised by the actual use of the pepper spray); *Arroyo v.*

5    *Tilton,* 2012 WL 1551655 (E.D. Cal. Apr. 30, 2012) (same).

6         The Court acknowledges that these allegations are serious. However, Rule 8(a) requires

7    not only "fair notice of the nature of the claim, but also grounds on which the claim rests." *Twombly,*

8    550 U.S. at 555 n.3. (citation and quotes omitted). Without identifying a claim for relief, the

9    underlying allegations in the complaint alone are not sufficient to put defendants on notice that

10    plaintiff was raising a separate claim based on his conditions of confinement or inadequate

11    medical treatment with respect to the pepper spray decontamination. Therefore, the Court

12    concludes that the complaint fails to meet the minimal requirement of Rule 8 that a pleading

13    allow each defendant to discern what he or she is being sued for. The Court recommends that

14    plaintiff be granted leave to amend his complaint to set forth a concise and direct statement of his

15    decontamination claim, if any, against defendants Smith and Grimm.

16         **D.  First Amendment – Retaliation**

17         Plaintiff alleges that defendants Grimm, Smith, and Quintanella denied plaintiff

18    recreation time, used force, and placed plaintiff in solitary confinement in retaliation for

19    comments and complaints about his lack of medical treatment, medication changes, loss of

20    property, and staff violence. Dkt. 29 at 5-6, 11.

21         To prevail on a retaliation claim, a plaintiff must allege and prove that the defendants

22    retaliated against him for exercising a constitutional right and the retaliatory action did not

23    advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v.*

24    *Gomez,* 108 F.3d 265, 267 (9th Cir. 1997); *Saint-Martin v. Price,* 2018 WL 731507 at *3 fn. 3

(E.D. Cal. Feb. 6, 2018) (noting no case law that distinguished the elements of a First

Amendment retaliation claim when brought by civil detainees as opposed to prisoners).

A civil detainee suing a defendant under § 1983 for retaliation for engaging in protected

speech must allege "the type of activity he engaged in was protected under the first amendment

and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo*

*v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

> Within the prison context, a viable claim of First Amendment retaliation entails five
> basic elements: (1) An assertion that a state actor took some adverse action against
> an inmate (2) because of (3) that prisoner's protected conduct, and that such action
> (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action
> did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Mere speculation that defendants

acted out of retaliation is not sufficient." *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014).

   *1.   Denial of Recreation Time and Placement in Segregation*

With respect to plaintiff's allegations that he was denied recreation time and placed in

segregation out of retaliation, plaintiff does not identify any named defendant who took these

alleged adverse actions following complaints of related to his mental health treatment or

medications. Dkt. 29 4-5. Rather, his allegations are vague and generalized, and plaintiff fails to

draw the necessary connection between the named defendants' actions and the alleged

constitutional violations. *See  Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious

liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Governmental-official

defendant, through the official's own individual actions, has violated the Constitution."); *Taylor*

*v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that a defendant is liable under § 1983

"only upon a showing of personal participation by a defendant."); *Leer v. Murphy*, 844 F.2d 628,

633 (9th Cir. 1991) ("The inquiry into causation must be individualized and focus on the duties

and responsibilities of each individual defendant whose acts or omissions are alleged to have

1  caused a constitutional deprivation."). Plaintiff must provide more than an "unadorned, the-

2  defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Therefore, the Court

3  recommends granting defendants' motion as to these claims. As noted below, however, plaintiff

4  should be given an opportunity to file an amended complaint to allege facts, if he can, that show

5  personal participation of defendants with respect to plaintiff's allegation that he was placed in

6  segregation and denied recreation time out of retaliation.

7          *2.  Physical Assault and Pepper Spraying*

8          Plaintiff alleges that defendant Smith punched and choked plaintiff after plaintiff voiced

9  displeasure with defendant Smith for taking his personal property. Dkt. 29 at 7, 10. Plaintiff

10  alleges that defendants Grimm and Quintanella pepper sprayed plaintiff after the complained

11  about the loss of his property and mental health treatment. Dkt. 29 at 4-6, 10.

12          Defendants argue that plaintiff's verbal complaints were not protected conduct and

13  plaintiff has not pled the absence of legitimate institutional goals underlying the alleged adverse

14  actions he complains of. Dkt. 65 at 7-9. Accordingly, the Court will focus on these two elements

15  in its analysis.

16              a.  Verbal complaints

17          As both parties point out, neither the Ninth Circuit nor the Supreme Court has decided

18  whether a prisoner or civil detainee's verbal complaints constitute protected conduct. *See Torres*

19  *v. Arellano*, 2017 WL 1355823, at *13 (E.D. Cal. Mar. 24, 2017) (recognizing the lack of Ninth

20  Circuit or Supreme Court authority on the issue). Defendants' contention that verbal complaints

21  are not protected conduct relies solely on the distinction between an oral grievance and a written

22  one, but the Court does not find any such distinction in the First Amendment. Rather, the Court

23  is persuaded by several cases from other district courts in the Ninth Circuit finding a valid claim

24

for retaliation where the plaintiff alleged that he was retaliated for his verbal complaints. *See Williams v. Bahadur*, 2016 WL 758782, at *5-6 (E.D. Cal. Feb. 26, 2016) (plaintiff sufficiently alleged that he engaged in protected conduct by verbally protesting a job assignment); *Ahmed v. Ringler*, 2015 WL 502855, at *7 (E.D. Cal. Feb. 5, 2015) (plaintiff's verbal complaint about search and seizure of his property constitutes protected conduct); *Hackworth v. Torres*, 2011 WL 1811035, at *1-3,*6 (E.D. Cal. May 12, 2011( (protected speech includes plaintiff's verbal assertions or argument with initial classification committee regarding prison policies). Thus, plaintiff has alleged facts demonstrating that he was engaged in protected conduct.

### b. Legitimate correctional goal

Defendants also argue that plaintiff has failed to allege facts demonstrating the absence of a legitimate correctional goal. Dkt. 65. The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. *Pratt*, 65 F.3d at 806. "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.' " *Watison*, 668 F.3d at 1114-15.

### i.    Pepper Spraying – Defendants Grimm and Quintanella

With respect to the pepper spraying by defendants Grimm and Quintanella, plaintiff alleges that he was pepper sprayed because he was not complying with defendants' orders. Dkt. 29 at 8, 10. Therefore, plaintiff has not met his burden of pleading the absence of legitimate correctional goals with respect to the pepper spraying. *See Pratt*, 65 F.3d at 806. Because plaintiff has failed to plead all elements of retaliation claim, the Court recommends that defendants' motion be granted as to plaintiff's retaliation claim against defendants Grimm and

1    Quintanella. The Court recommends that plaintiff be granted leave to amend to allege facts, if

2    any, supporting the elements of a retaliation claim against defendants Grimm and Quintanella.

3                      ii.        Physical Assault – Defendant Smith

4          With respect to defendant Smith and the alleged punching and choking, plaintiff alleges

5    that he was not resisting and was restrained at the time of the alleged retaliatory actions.

6    Therefore, the Court concludes that the allegations suffice to allege the absence of a legitimate

7    penological goal as there does not appear to be any legitimate correctional served by punching

8    and choking a civil detainee who is not resisting and who is not restrained.

9          Plaintiff must only plead sufficient facts for the Court to find it "plausible" that defendant

10   Smith retaliated against him in violation of his rights under the First Amendment. *See Iqbal*, 556

11   U.S. at 681. Defendants have not proven that plaintiff's set of facts, if proven, would not entitle

12   plaintiff to relief. *See Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (quoting *Conley

13   v. Gibson*, 355 U.S. 41, 45-46 (1990)). Although a summary judgment motion may result in a

14   different conclusion, the standard governing a motion for judgment on the pleadings allows the

15   conclusion at this point in the proceedings that the plaintiff has stated facts establishing more

16   than a mere possibility that the defendant Smith acted in violation of plaintiff's First Amendment

17   rights. *See Twombly,* 550 U.S. at 545.

18            **E.  Mental Health Treatment**

19         Plaintiff alleges that defendants Harris, Coryell, and Rockwell modified or cancelled his

20   psychological medication. Dkt. 29 at 8-10. Plaintiff alleges that defendant Coryell acted with

21   deliberate indifference when she allowed plaintiff to go without his treatment needed for his

22   diagnosed illnesses. *Id.* at 9. Plaintiff alleges these actions violated his Fourteenth Amendment

23   rights and violated the ADA/RA. *Id.* at 15-16.

24

1    The Fourteenth Amendment applies to claims of constitutionally inadequate medical care

2    for involuntarily committed SVPs. *Mitchell v. State of Washington*, 818 F.3d 436, 443 (9th Cir.

3    2016) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982); *Ammons v. Wash. Dep't of Soc.*

4    *& Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011)). "A civil detainee ... is entitled to

5    conditions of confinement that are not punitive." *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir.

6    2004). Accordingly, plaintiff is "entitled to more considerate treatment and conditions of

7    confinement than criminals whose conditions of confinement are designed to punish," but

8    officials need only ensure that "professional judgment" was exercised. *Youngberg*, 457 U.S.

9    322–23. Under this standard, a "decision, if made by a professional, is presumptively valid;

10   liability may be imposed only when the decision by the professional is such a substantial

11   departure from accepted professional judgment, practice, or standards as to demonstrate that the

12   person responsible actually did not base the decision on such a judgment." *Id.* at 323. "This

13   standard has been referred to as the '*Youngberg* professional judgment standard.'" *Mitchell v.*

14   *Washington*, 818 F.3d 436, 443 (9th Cir. 2016) (quoting *Ammons v. Wash. Dep't. of Soc. &*

15   *Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011)).

16   As an initial matter, to the extent that plaintiff alleges that his change in medication or

17   lack of medical treatment somehow caused him to commit assault, as discussed above, plaintiff

18   concedes that he is not arguing any type of wrongful incarceration or false imprisonment claim

19   and those claims are barred under the *Heck* doctrine.

20   Nevertheless, even considering plaintiff's non-*Heck* barred claims, plaintiff fails to

21   identify any particular incidents in which any named defendant denied him mental health

22   treatment. Plaintiff fails to allege facts specifying what medication he was denied medication or

23   mental health treatment or the duration of the alleged denial. Nor has he alleged any facts

24

demonstrating how the actions of defendants Harris, Coryell, and Rockwell deviated from professional judgment in administering plaintiff's mental health treatment. Rather, his allegations are vague and generalized and do demonstrate *how* any defendant subjected plaintiff to a substantial departure from accepted professional judgment, practice or standards. Plaintiff fails to draw the necessary connection between the named defendants' actions and the alleged constitutional violations. The lack of factual allegations with respect to *how* and *when* he was deprived of mental health treatment amounts to a failure to state a claim. *See Taylor*, 880 F.2d at 1045 (9th Cir. 1989) (holding that a defendant is liable under § 1983 "only upon a showing of personal participation by a defendant."); *Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Plaintiff must provide more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009). Accordingly, the Court recommends defendants' motion be granted as to this claim as to plaintiff's mental health claims against defendants Harris, Coryell, and Rockwell. As noted below, plaintiff should be given an opportunity to file an amended complaint to allege facts, if he can, that show how defendants Harris, Coryell, and Rockwell denied plaintiff adequate mental health treatment.

### F. Due Process

Plaintiff alleges that he was punished by being placed in solitary confinement. Dkt. 29 at 15. Plaintiff contends that he was not provided with a hearing. *Id.*

With respect to civil detainees, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount

to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' " *Id.* at 538–39, (internal citations omitted); *see also Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004); *Hiser v. Nevada Dep't of Corr.,* 708 F. App'x 297, 300 (9th Cir. 2017).

Here, plaintiff fails to allege facts demonstrating any named defendant is responsible for plaintiff's placement in segregation. Aside from his conclusory allegations, his complaint is devoid of details such as to the date, duration, or party responsible for his placement in segregation. Plaintiff only summarily states that his rights were violated without providing anything more. Accordingly, plaintiff has not sufficiently alleged facts supporting a due process violation with respect to plaintiff's placement in segregation. As noted below, plaintiff should be given an opportunity to file an amended complaint to allege facts, if he can, that show personal participation of defendants with respect to his placement in segregation.

### G.  Equal Protection

Plaintiff also alleges that his equal protection rights were violated. Dkt. 29. To state an equal protection claim, a plaintiff first must show that he "has been intentionally treated differently from others similarly situated ...." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000); *Silveira v. Lockyer,* 312 F.3d 1052, 1087–88 (9th Cir. 2002), *cert. denied,* 540 U.S. 1046 (2003). "Similarly situated" persons are those "who are in all relevant respects alike." *Silveira,* 312 F.3d at 1088 (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)). To allege an equal protection violation based on race, religion, national origin, or alienage the plaintiff "must show

1    that the defendant acted with an intent or purpose to discriminate against him based upon his

2    membership in a protected class. 'Intentional discrimination means that a defendant acted at least

3    in part *because of* a plaintiff's protected status.' " *Serrano v. Francis,* 345 F.3d 1071, 1082 (9th

4    Cir. 2003) (emphasis in original) (citing *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.

5    1998) and quoting *Maynard v. City of San Jose,* 37 F.3d 1396, 1404 (9th Cir. 1994)), *cert.*

6    *denied,* 543 U.S. 825 (2004); *Korematsu v. United States,* 323 U.S. 214 (1944).

7    　　　　Here, plaintiff has failed to allege any facts describing discrimination based on race,

8    religion, or his membership in any other protected class. For example, plaintiff does not allege

9    that defendants are responsible for a discriminatory policy which resulted in the alleged

10   constitutional violations. The mere fact that defendants took certain actions does not show that

11   they acted with a discriminatory intent.

12   　　　　Accordingly, plaintiff has not sufficiently alleged facts supporting a claim that defendants

13   violated his equal protection rights. The Court recommends defendants' motion be granted as to

14   plaintiff's equal protection claim. As noted below, plaintiff should be given an opportunity to file

15   an amended complaint to allege facts, if he can, that showing how defendants violated plaintiff's

16   equal protection rights.

17   　　　　　　　　　**H.  Takings and Deprivation of Property**

18   　　　　Plaintiff alleges that defendant Smith took away unspecified personal property from

19   plaintiff's living space without a hearing. Dkt. 29 at 14. Plaintiff alleges that he did not have a

20   pre or post deprivation hearing. *Id.* Plaintiff alleges that this is a violation of the Fifth

21   Amendment. *Id*

22   　　　　The Fifth Amendment to the United States Constitution provides, in part, that no private

23   property shall be taken for public use without just compensation. U.S. Const. amend. V. The

24

1  Fifth Amendment is made applicable to state governments through the due process clause of the

2  Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160

3  (1980). The Fifth Amendment takings clause "limits the government's ability to confiscate

4  property without paying for it." *Vance v. Barrett,* 345 F.3d 1083, 1089 (9th. Cir. 2003). Here,

5  plaintiff fails to allege that defendants confiscated any of his personal property for public use.

6  Thus, plaintiff has failed to state a claim pursuant to the takings clause of the Fifth Amendment.

7  Because plaintiff's Fifth Amendment claim fails as a matter of law, the Court recommends

8  granting defendants' motion as to this claim without leave to amend.

9        Plaintiff also alleges the deprivation of his property violated the due process clause

10  pursuant to the Fourteenth Amendment and the Fourth Amendment. Dkts. 29, 68.  The Due

11  Process Clause protects against the deprivation of property without due process of law, *Wolff v.*

12  *McDonnell,* 418 U.S. 539, 556 (1974), and prisoners and civil detainees have a protected interest

13  in their personal property, *Hansen v. May,* 502 F.2d 728, 730 (9th Cir. 1974). Only an

14  authorized, intentional deprivation of property is actionable under the Due Process Clause.

15  *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Authorized deprivations of property are

16  permissible if carried out pursuant to a regulation that is reasonably related to a legitimate

17  penological interest. *Turner v. Safley,* 482 U.S. 78, 89 (1987).

18        The Fourth Amendment prohibition on unreasonable searches can be applied to civil

19  detainees. *See Hydrick,* 500 F.3d at 993 (citing *Thompson v. Souza,* 111 F.3d 694, 699 (9th Cir.

20  1997)). *See also Hoch v. Mayberg,* 2014 WL 2091244 at *2 (E.D. Cal. May 14, 2014); *Bell v.*

21  *Wolfish,* 441 U.S. 520, 558 (1979); *Byrd v. Maricopa County Sheriff's Office,* 629 F.3d 1135,

22  1140 (9th Cir. 2011); *Michenfelder v. Sumner,* 860 F.2d 328, 332 (9th Cir. 1988). For the Fourth

23  Amendment to apply, there must be a "reasonable expectation of privacy in the area invaded."

24

1    *Espinosa v. City and County of San Francisco,* 598 F.3d 528, 533 (9th Cir. 2010); *Hudson v.*

2    *Palmer,* 468 U.S. 517, 525 (1984); *Bell v. Wolfish,* 441 U.S. 520, 556–57 (1979). A search will

3    violate a civilly detained sexually violent predator's Fourth Amendment rights if it is " 'arbitrary,

4    retaliatory, or clearly exceeds the legitimate purpose of detention.' " *Meyers v. Pope,* 303 F.

5    App'x 513, 516 (9th Cir. 2008) (quoting *Hydrick,* 500 F.2d at 993).

6        Plaintiff alleges in a conclusory manner that his constitutional rights were violated when

7    defendant Smith confiscated his property. Dkt. 29 at 14. Plaintiff has failed to identify what

8    personal property was confiscated. He also fails to allege facts demonstrating how long he was

9    deprived of his property and what harm ultimately resulted from the derivation of property. Even

10   "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim

11   that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir.

12   1997) quoting *Ivey* , 673 F.2d at 268, and courts are not required to indulge unwarranted

13   inferences, *Doe I v. Wal–Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

14   marks and citation omitted). Plaintiff has failed identify specific facts supporting the existence of

15   substantively plausible claims for relief. *Twombly,* 550 U.S. at 555 n.3 (Rule 8(a) requires not only

16   "fair notice of the nature of the claim, but also grounds on which the claim rests.").  The Court

17   recommends that defendants' motion as to plaintiff's unreasonable search and deprivation of

18   property claims be granted. As noted below, plaintiff should be given an opportunity to file an

19   amended complaint to allege facts, if he can, that show how his Fourth Amendment rights were

20   violated when he was searched, and how his Fourteenth Amendment rights were violated when

21   he was deprived of his personal property.

22       **I.   Access to Courts**

23

24

1    Plaintiff also alleges that he had his "legal files" removed from his possession, thus

2    depriving him of the ability to "assist Counsel and exercise his [First] Amendment rights." Dkt.

3    29 at 14.

4    The due process clause of the United States Constitution guarantees prisoners and civil

5    detainees the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821

6    (1977). In *Bounds,* the Supreme Court held that the right of access imposes an affirmative duty

7    on prison officials to assist prisoners in preparing and filing legal papers, either by establishing

8    an adequate law library or by providing adequate assistance from persons trained in the law. *Id.*

9    at 828. In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that a prisoner must

10   show some actual injury resulting from a denial of access to allege a constitutional violation. *Id.*

11   at 349. An actual injury consists of some specific instance in which a prisoner was actually

12   denied meaningful access to the courts. *Lewis*, 518 U.S. at 350–55 (1996). *Jones*, 393 F.3d at

13   936 (applying this standard to a detainee awaiting civil commitment proceedings).

14   However, here, aside from the conclusory allegation that defendants violated his First

15   Amendment rights, plaintiff provides no details as to how he was prevented from filing an action

16   in court. *See* Dkt. 29. Nor has plaintiff alleged any actual injury in his complaint. There are no

17   allegations that plaintiff was denied access to the courts in a non-frivolous direct criminal appeal,

18   habeas corpus proceeding, or § 1983 case, nor are there allegations showing that plaintiff had a

19   legal claim frustrated by the actions of the named defendants. The Court recommends that this

20   claim be dismissed. As noted below, plaintiff should be given an opportunity to file an amended

21   complaint to allege facts, if he can, that show how his First Amendment rights were violated

22   when he was allegedly denied access to the courts.

23   **J.  Supervisory Liability – Defendants Coryell, Strong, and Harris**

24

1    Plaintiff alleges that defendant Coryell was the head of the clinic at the SCC and she

2    failed to prevent the alleged constitutional violations. Dkt. 29 at 12. Plaintiff alleges defendant

3    Harris was the Chief of Residential Life at the SCC and oversaw staff at the SCC. Dkt. 29 at 9.

4    Plaintiff alleges defendant Harris was responsible for investigating complaints and failed to

5    address the issues raised by plaintiff. *Id.* Plaintiff alleges defendants Harris, Strong, and Coryell

6    approved the actions of the remaining defendants. Dkt. 29 at 13. Plaintiff alleges that defendants

7    acted under the supervision of defendants Coryell, Strong, and Harris. Dkt. 29 at 14.

8    A plaintiff must show the individually named defendant caused, or personally

9    participated in causing, the alleged harm. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988);

10   *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). As such, in a § 1983

11   action, "supervisory officials are not liable for actions of subordinates on any theory of vicarious

12   liability." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989) (citing *Pembaur v. City of

13   Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, a supervisor may only be liable "if there exists

14   either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

15   causal connection between the supervisor's wrongful conduct and the constitutional violation."

16   *Id.* at 646 (citation omitted). "The requisite causal connection can be established ... by setting in

17   motion a *series of acts* by others, or by knowingly refus[ing] to terminate a *series of acts* by

18   others, which [the supervisor] knew or reasonably should have known would cause others to

19   inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011); *See also

20   Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (holding that without allegations of a

21   specific instance of the use of excessive force, plaintiffs failed to establish that three

22   administrators in police chain of command set in motion a series of actions and that they knew or

23   reasonably should have known would cause a constitutional injury) (internal citation omitted).

24

1    Here, plaintiff has failed to allege that defendants Coryell, Harris, and Strong were

2    directly involved in any of the alleged constitutional violations. It is not enough that defendants

3    Coryell, Strong, and Harris bore supervisory responsibility for the activities of the SCC. Plaintiff

4    has failed to allege facts demonstrating that defendants Coryell, Strong, and Harris "set[ ] in

5    motion a series of acts" that defendants Coryell, Strong, and Harris "knew or reasonably should

6    have known" would cause the SCC staff "to inflict a constitutional injury." *Starr*, 652 F.3d  at

7    1207-08; *Felarca v*, 891 F.3d at 819-20; *See also Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir.

8    2012) (it is insufficient for a plaintiff to only allege the defendant, as a supervisor, knew about

9    any alleged constitutional violation and the supervisor generally tolerated the violation, without

10    alleging "a specific policy" or "a specific event or events" instigated by the supervisor that led to

11    the constitutional violations). Without such a causal connection, plaintiff cannot hold defendants

12    Coryell, Strong, or Harris liable solely by virtue of his or her office and there is no respondeat

13    superior liability under § 1983. *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002). The Court

14    recommends defendants' motion be granted and any claims against defendants Coryell, Strong,

15    and Harris be dismissed. Because plaintiff's claims for supervisory liability against defendants

16    Coryell, Strong, and Harris fail as a matter of law, the Court recommends that plaintiff not be

17    granted leave to amend.

18    **K.  Defendant Davos**

19    Plaintiff identifies defendant Davos as a defendant but makes no other factual allegations

20    against him. *See* Dkt. 29. To state a claim against any individual defendant, plaintiff must allege

21    facts showing that the individual defendant participated in or directed the alleged violation or

22    knew of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193,

23    1194 (9th Cir. 1998), *cert. denied,* 525 U.S. 1154 (1999). As plaintiff has failed to allege facts

24

1    showing that defendant Davos personally participated in the alleged constitutional violations,

2    Plaintiff has failed to state a claim against defendant Davos. Accordingly, the Court recommends

3    that defendants' motion be granted and defendant Davos be dismissed. As noted below, plaintiff

4    should be given an opportunity to file an amended complaint to allege facts, if he can, that show

5    how defendant Davos violated his constitutional rights.

6            **L.  Eleventh Amendment Immunity – Official Capacity**

7         Plaintiff includes the DSHS as a defendant in his civil rights claim and seeks damages

8    against all defendants. *See* Dkt. 29

9         Section 1983 creates a cause of action for a plaintiff whose constitutional rights have

10   been violated by any "person" acting under color of law. 42 U.S.C. § 1983. However, for the

11   purposes of § 1983, a state is not a "person."  *See Arizonans for Official English v. Arizona*, 520

12   U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Similarly, an

13   agency that is an arm of the state is also not a "person" under § 1983. *See Hewlett v. Rose*, 496

14   U.S. 356, 365 (1990); *also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (concluding

15   that the suit against the state Board of Corrections was barred by the Eleventh Amendment. In

16   addition, a suit against a state official in his official capacity is no different from a suit against

17   the State itself. *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) ("state

18   officials sued in their official capacities are not 'persons' within the meaning of § 1983).

19        To the extent that plaintiff seeks to recover damages against defendants in their official

20   capacities and against DSHS, an agency of the state of Washington, plaintiff's claims should be

21   dismissed. Because this claim fails as a matter of law, the Court recommends granting

22   defendants' motion as to plaintiff's claims against DSHS and official capacity claims against all

23   defendants without leave to amend.

24

1

**M. Injunctive Relief – DSHS**

2      In addition to seeking monetary damages, plaintiff also requests injunctive relief, asking

3  the Court to declare defendants' actions unconstitutional and to enjoin them from future

4  unconstitutional conduct. Dkt. 29. Though plaintiff was a civil detainee, not a prisoner, the Court

5  may use the logic of state prisoner cases when analyzing the propriety of injunctive and

6  declaratory release after a civil committee has been released to the community. *See Williams v.*

7  *Botich*, 2010 WL 11534578 at *5 (C.D. Cal. 2010) (applying reasoning used in state prisoner

8  cases regarding injunctive relief to a civil detainee). A prisoner's release while his case is still

9  pending "will moot any claims for injunctive relief relating to the prison's policies unless the suit

10  has been certified as a class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). As with

11  injunctive relief, a prisoner's release from prison will generally moot claims seeking declaratory

12  relief. *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012); *see Rhodes v. Stewart*, 488 U.S. 1, 2-

13  4 (1988) (per curiam). "The reason is that the released inmate is no longer subject to the prison

14  conditions or policies he challenges." *Alvarez*, 667 F.3d at 1064; *see also Incumaa v. Ozmint*,

15  507 F.3d 281, 286–87 (4th Cir. 2007) (citing cases from several circuits).

16      Plaintiff is no longer in custody at the SCC, and so he is no longer subjected to the

17  allegedly unlawful conduct described in his complaint. Even if plaintiff *may* return to the SCC

18  after his DOC incarceration, plaintiff has failed to allege facts showing that he is in a real or

19  immediate risk of harm from the DSHS or SCC. Because he is no longer subjected to the

20  conditions, a request that the Court order defendants to treat plaintiff differently is moot.

21  Therefore, the Court recommends defendants' motion be granted and plaintiff's request for

22  injunctive relief be denied. Because plaintiff's request for injunctive relief fails as a matter of

23

24

1    law, the Court recommends granting defendants' motion as to injunctive relief without leave to

2    amend.

3            **N.  Qualified Immunity**

4            The Court recommends denying defendants' motion as to plaintiff's claims of retaliation

5    and use of force claims against defendant Smith. *See supra.* Defendants argue that they are also

6    entitled to qualified immunity. Dkt. 65.

7            "[G]overnment officials performing discretionary functions [are entitled to] qualified

8    immunity, shielding them from civil damages liability as long as their actions could have

9    reasonably been thought consistent with the rights they are alleged to have violated." *Anderson v.*

10   *Creighton,* 483 U.S. 635, 638 (1987). The first step in the qualified immunity analysis is whether

11   the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the

12   [defendant's] conduct violated a constitutional right[.]" *See Saucier v. Katz,* 533 U.S. 194, 201

13   (2001). The second step is whether the right was clearly established at the time of the alleged

14   violation. *Id.*

15           However, because any qualified immunity ruling would be based on plaintiff's

16   allegations rather than a tangible set of facts with evidence support, a determination on qualified

17   immunity is not appropriate at this stage. While the Court acknowledges the importance of

18   resolving immunity questions at the earliest possible stage in litigation, *Wood v. Moss,* 572 U.S.

19   744, 755 n.4 (2014), there are still facts which have  not been fully developed. A motion  for

20   judgment on the pleadings should only be granted if "the moving party clearly establishes on the

21   face of the pleadings that no material issue of fact remains to be resolved and  that it is entitled to

22   judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner &  Co., Inc.,* 896 F.2d

23   1542, 1550 (9th Cir. 1989) (internal citations omitted). It would be premature to decide qualified

24

immunity here,  without more information regarding the factual circumstances which might bear on the Court's  analysis. *See Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (holding that, in light of the  fact that all allegations in the complaint must be regarded as true on a motion to dismiss,  "dismissal [on qualified immunity grounds] for failure to state a claim under 12(b)(6) is inappropriate."); *Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004) (noting it is difficult for courts to decide qualified immunity at the motion to dismiss stage because it forces the Court to decide "far-reaching constitution questions on a nonexistent factual record," and suggesting the issue is better left for summary judgment). Accordingly, defendants' entitlement to qualified immunity cannot be resolved on the pleadings in this case, and the Court recommends the motion be denied without prejudice. Defendants may re-raise the qualified immunity defense after further development of the record and conclusion of discovery.

### O.  State Law Claims

Plaintiff alleges state law causes of action for battery, assault and harassment. Dkt. 29 at 5. Defendants to not seek dismissal of plaintiff's state law claims in their motion. Dkt. 65. Because the Court concludes that plaintiff's federal retaliation and use of force claims remain against defendant Smith, the Court need not address whether it lacks supplemental jurisdiction over the state law claims at this time.

### P.  ADA/RA

Plaintiff alleges that defendants violated his rights under the ADA and RA. Dkt. 29. Plaintiff alleges that he was denied treatment for his mental illness. *Id.* at 4-5. Defendants argue that plaintiff's ADA and RA claims are vague and insufficient to state a claim. Dkt. 65. In his response, plaintiff concedes that he "did not make an express allegation that the denial of benefits/discrimination was due to his disability, he did assert that he was denied medical treatment as a result of his acting out." Dk. 68 at 28.

1    The Court is not able to discern the exact nature of the claims or whether plaintiff is

2    attempting to bring his ADA and RA claims against defendants in their individual or official

3    capacities. To the extent that plaintiff is attempting to bring these claims against defendants in

4    their individual capacities, plaintiff fails to state a claim because individual liability is precluded

5    under the ADA and RA. *Stewart v. Unknown Parties,* 483 F. App'x 374, 374 (9th Cir. 2012)

6    (citing *Lovell v. Chander,* 303 F.3d 1039, 1052 (9th Cir. 2002)); *see also Garcia v. S.U.N.Y.*

7    *Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the ADA does not

8    provide for individual capacity suits against state officials.).

9    To the extent that plaintiff is attempting to bring ADA and RA claims against defendants

10    in their official capacities, the ADA provides a "qualified individual with a disability" cannot,

11    "by reason of such disability, be excluded from participation in or be denied the benefits of the

12    services, programs, or activities of a public entity, or be subjected to discrimination by any such

13    entity." 42 U.S.C. § 12132. "To state a claim of disability discrimination under Title II [of the

14    ADA], the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability;

15    (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public

16    entity's services, programs, or activities; (3) the plaintiff was either excluded from participation

17    in or denied the benefits of the public entity's services, programs, or activities, or was otherwise

18    discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

19    discrimination was by reason of the plaintiff's disability." *Thompson v. Davis,* 295 F.3d 890, 895

20    (9th Cir. 2002). Plaintiff's RA claim is analyzed under those same standards. *Duvall v. Cnty. of*

21    *Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001).

22    Plaintiff fails to allege facts showing that defendants discriminated against him *on the*

23    *basis of* his alleged disability. *See* Dkt. 29. Here, plaintiff's ADA and RA claims are based on

24

1   defendants' alleged failure to provide adequate treatment for his mental illness. *See* Dkt. 29 at 4-

2   5. Hence, plaintiff's allegations about inadequate medical care are not actionable under the ADA

3   or RA. "The ADA prohibits discrimination *because of* disability, not inadequate treatment for

4   disability." *Simmons v. Navajo Cty,* 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added)

5   (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated

6   by a prison's simply failing to attend to the medical needs of its disabled prisoners.... The ADA

7   does not create a remedy for medical malpractice.")); *See also Alexander v. Tilton,* 2009 WL

8   464486, at *7 (E.D. Cal. Feb. 24, 2009) (collecting cases and noting that "other courts have

9   found that the ADA and [the RA] do not create a federal cause of action for prisoners

10   challenging the medical treatment provided for their underlying disabilities"); *Burger v.*

11   *Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005) (holding that claims pursuant to the ADA or the

12   Rehabilitation Act "cannot be based on medical treatment decisions"); *Grzan v. Charter Hosp. of*

13   *Northwest Indiana,* 104 F.3d 116, 121–22 (7th Cir. 1997) ("Allegations of discriminatory

14   medical treatment do not fit into the four-element framework required by section 504 [of the

15   Rehabilitation Act]."); *Figueira ex rel. Castillo v. Cnty. of Sutter,* 2015 WL 6449151, at *8–9

16   (E.D. Cal. Oct. 23, 2015) (dismissing ADA/RA claims arising from suicide of mentally ill

17   inmate following allegedly inadequate health care in custody; noting that "[t]he defendants

18   cannot have violated the ADA by failing to attend to the medical needs of disabled prisoners").

19        Thus, plaintiff has failed to state a claim under the ADA or RA against defendants.

20   Accordingly, defendants' motion should be granted as to plaintiff's ADA and RA claims, but

21   that plaintiff be granted leave to amend to allege facts, if any, demonstrating how he was

22   discriminated against on the basis of a disability.

23        **Q.  Leave to Amend**

24

1    The Court concludes that plaintiff has stated a claim against defendant Smith for the

2    alleged retaliation and use of force. The Court recommends all other claims be dismissed and

3    defendants' motion be granted as to those claims. In his response, plaintiff seeks leave to amend

4    the complaint to correct the identified deficiencies. Dkt. 68 at 12-13. In their reply, defendants

5    argue that leave to amend would be futile given their argument for qualified immunity. Dkt. 71.

6    Where a motion to dismiss is granted, a district court should provide leave to amend

7    unless it is clear that the complaint could not be saved by any amendment. *See Eminence*

8    *Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Even after a complaint has

9    been amended or a responsive pleading has been served, the Federal Rules of Civil Procedure

10   provide that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R.

11   Civ. P. 15(a)(2). The Ninth Circuit requires that this policy favoring amendment be applied with

12   "extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.

13   1990). "In determining whether leave to amend is appropriate, the district court considers 'the

14   presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or

15   futility.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)

16   (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).

17   Here, the Court finds that plaintiff may be able to overcome the deficiencies of the

18   complaint if he is given an opportunity to amend. Moreover, the Court recommends that

19   defendants' motion as to qualified immunity be denied at this time, thus, defendants futility

20   argument is unavailing. Accordingly, the Court finds that the interests of justice require giving

21   plaintiff leave to amend to correct the deficiencies identified herein: use of force claim against

22   defendants Grimm and Quintanella; retaliation claim related to placement in segregation and

23   denial of recreation time and against defendants Grimm and Quintanella; decontamination claim

24

1   against defendants Grimm and Smith; inadequate mental health treatment claim against

2   defendants Harris, Coryell, and Rockwell; due process claim based on placement in segregation;

3   equal protection claim; unreasonable search and deprivation of property claims; access to courts

4   claim; claim(s) against defendant Davos; and ADA and RA claims. The Court notes that

5   plaintiff's incorporation of factual allegations spanning over several months and attempting to

6   cover multiple instances of alleged constitutional violations make it difficult for defendants and

7   the Court to determine which factual allegations and claims are being raised against each named

8   defendant. In preparing the amended complaint, plaintiff's counsel shall carefully evaluate the

9   contentions set forth in defendants' motion and outlined herein by the Court.

10          The Court recommends that plaintiff not be granted leave to amend the following claims

11  because these claims fail as a matter of law: claims barred under the *Heck* doctrine; Fifth

12  Amendment takings claim; supervisory liability against defendants Coryell, Harris, and Strong;

13  official capacity claims against all individual defendants and DSHS; and injunctive relief against

14  DSHS.

15                                  **CONCLUSION**

16          For the reasons set forth above, the Court recommends denying in part and granting in

17  part defendants' motion for judgment on the pleadings. The Court recommends that plaintiff be

18  granted leave to amend his claims as outlined above.

19

20

21

22

23

24

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P.

6. Failure to file objections will result in a waiver of those objections for purposes of appeal.

*Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the

Clerk is directed to set the matter for consideration on **May 1, 2020** as noted in the caption.

Dated this 7th day of April, 2020

J. Richard Creatura
United States Magistrate Judge